**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

**CASE NO. 3:17-00348-CIV-HES/MCR**

**BENJAMIN MICHAEL DUBAY,**

    **Plaintiff,**

vs.

**STEPHEN KING; MEDIA RIGHTS CAPITAL; IMAGINE ENTERTAINMENT; SONY PICTURES ENTERTAINMENT; MARVEL ENTERTAINMENT; SIMON & SCHUSTER,**

    **Defendants.**

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

**A.**   The Central Concept of Plaintiff's Motion is Chain of Title ...................................1

**B.**   Plaintiff's Complaint and Interrogatory Responses Claim a Different Chain of Title From the Motion..................................................................................5

**C.**   The Motion's Chain of Title is Erroneous ..............................................................7

**D.**   The Most Likely Chain of Title for the Pre-1978 Rook Work Copyright Leads to a Non-Party LLC.......................................................................................9

**E.**   Even if the Forged 1986 "Assignment" From Warren to WBD Had Been Genuine, There Would Still Be a Defective Chain of Title...................................12

**F.**   Conclusion .............................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*16 Casa Duse, LLC v. Merkin*
  791 F.3d 247 (2nd Cir. 2015)..................................................................................4

*Aalmuhammed v. Lee*
  202 F.3d 1227 (9th Cir. 2000) ................................................................................5

*Community For Creative Non–Violence v. Reid*
  490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).....................................5, 10

*Fleischer Studios, Inc. v. AVELA, Inc.*
  654 F.3d 958 (9th Cir. 2011) ...............................................................................2, 3

*Fritz v. Arthur D. Little, Inc.*
  944 F.Supp. 95 (D.Mass. 1996) ..............................................................................4

*Garcia v. Google, Inc.*
  786 F.3d 733 (9th Cir. 2015) ..................................................................................4

*Int'l Media Films, Inc. v. Lucas Entertainment Inc.*
  703 F.Supp.2d 456 (S.D.N.Y.2010)........................................................................2

*Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*
  No. 87 Civ. 5775, 1989 WL 117704 (S.D.N.Y. Oct. 2, 1989) ................................2

*Klinger v. Conan Doyle Estate, Ltd.*
  755 F.3d 496 (7th Cir. 2004) ..................................................................................3

*Montgomery v. Noga*
  168 F.3d 1282,1289 (11th Cir. 1999) .....................................................................2

*Murray v. Gelderman*
  566 F.2d 1307 (5th Cir.1978) ...............................................................................10

*Neva, Inc. v. Christian Duplications, Intl., Inc.*
  743 F.Supp. 1533 (MD Fla 1990).........................................................................10

*Olson v. Nat'l Broad. Co.*
  855 F.2d 1446 (9th Cir. 1988) ................................................................................3

*Rice v. Fox Broad. Co.*
  330 F.3d 1170 (9th Cir. 2003) ................................................................................3

*Rogers v. Koons*
    960 F.2d 301 (2d Cir.1992)......................................................................................2

*Thomson v. Larson*
    147 F.3d 195 (2d Cir. 1998)......................................................................................5

*Yardley v. Houghton Mifflin Co.*
    108 F.2d 28 (2d Cir.1939), *cert. denied*, 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029
    (1940)......................................................................................................................10

**FEDERAL STATUTES**

1909 Copyright Act, 17 U.S.C. §1 (repealed 1976)..........................................................4

1909 Copyright Act, 17 U.S.C. §3 (repealed 1976)..........................................................3

17 U.S.C. §102..............................................................................................................4, 8

17 U.S.C. §410..............................................................................................................2, 9

17 U.S.C. §411...................................................................................................................8

**STATE STATUTES**

Oregon Rev. Stat. 84.007.............................................................................................12, 13

**TREATISES**

3 M. & D. Nimmer, *Nimmer on Copyright*,
    §7.02[c][2] .................................................................................................................4
    §7.16[A][[2][b], and 7.16[A][2][c][i] ........................................................................4
    §12.11[C] (2018)........................................................................................................2

Defendants Stephen King ("King"), MRC II Distribution Company L.P. ("MRC") (erroneously sued herein as "Media Rights Capital"), Imagine Entertainment ("Imagine"), Marvel Entertainment ("Marvel"), Simon & Schuster, Inc. ("S&S"), and Sony Pictures Entertainment ("SPE") hereby file their Opposition to Plaintiff's Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT

As nothing in the copyright registration attached to the Amended Complaint evidences plaintiff's right to claim through Warren Publishing Company ("WPC"), the original copyright claimant, plaintiff has the burden proving a valid chain of title. He has failed to meet that burden here. To be clear, plaintiff's motion is devoid of admissible proof that:

- The Rook that appeared in EERIE 82 was delineated to the extent necessary to warrant standalone copyright protection; and
- Even if it was, that anyone other than WPC, an entity from which plaintiff *no longer claims* his copyright ownership claim originates, actually owned the character of the Rook as he appeared in EERIE 82. WPC is not a litigant.

Discovery has shown that the purported 1986 assignment from James Warren to William DuBay -- the linchpin of plaintiff's original and Amended Complaint—was forged. Plaintiff's new chain of title theory starts with William B. DuBay's purported ownership of unprotectible, unfixed ideas, and preliminary draft works that defendants could not have had access to, cannot save him from this fact. Plaintiff does not now, and has not ever, owned the Rook from EERIE 82. His motion must be denied.

    A.    **The Central Concept of Plaintiff's Motion is Chain of Title**

Because Plaintiff did not author the work on which he bases his claim, Plaintiff's motion is dependent upon proving his ownership of the allegedly infringed work by establishing a valid

chain of title from the initial author. He has not done so. Indeed, the term "chain of title" is absent from Plaintiff's motion.

To have standing to make a claim of copyright infringement, the plaintiff must demonstrate ownership of a valid copyright. *Montgomery v. Noga*, 168 F.3d 1282,1289 (11th Cir. 1999). Under the Copyright Act, a certificate of registration in the name of a plaintiff constitutes prima facie evidence of the plaintiff's valid ownership of a copyright and of the facts stated in the certificate. 17 U.S.C. §410(c); Eleventh Cir. Pattern Jury Instructions 9.4 (2017 rev.). *See Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir.1992). An assignee of a valid copyright who is not named on the registration as the owner has the additional burden of proving a valid chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant. 3 M. & D. Nimmer, *Nimmer on Copyright*, § 12.11[C] (2018). *See Int'l Media Films, Inc. v. Lucas Entertainment Inc.*, 703 F.Supp.2d 456, 463 (S.D.N.Y.2010); *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, No. 87 Civ. 5775, 1989 WL 117704, at *1 (S.D.N.Y. Oct. 2, 1989).

The leading case with respect to establishing chain of title in a cartoon character created under the Copyright Act of 1909 is *Fleischer Studios, Inc. v. AVELA, Inc.*, 654 F.3d 958 (9th Cir. 2011). There, in recognizing a copyright owner's right to create a valid chain of title to the Betty Boop character, the court relied upon §3 of the Copyright Act of 1909, which provided:

> "The copyright provided by this title shall protect all the copyrightable components of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in

2

respect thereto which he would have had if each part were individually copyrighted under this title."

17 U.S.C. §3 (repealed). *Id.* at 961.

The court found that a character is a copyrightable component and noted that "characters that are 'especially distinctive' or the 'story being told' receive protection apart from the copyrighted work," relying upon *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175-76 (9th Cir. 2003) and *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988). Since the parties had conceded that Betty Boop was "especially distinctive," it became a separate copyrightable component of one of plaintiff's 1930 films, and the court found that plaintiff, by virtue of its copyright ownership, owned all rights in Betty Boop which it would have had if it had individually copyrighted it. *Id.*

Pursuant to these principles, if The Rook as contained in the registered work EERIE 82 was especially distinctive, distinctively delineated, or the story being told, the copyright owner of the comic in which it appeared would own rights in the character, but only as it then existed, because ownership of copyright is constitutionally required to be for "limited times." *See* U.S. CONST., art. I, §8, cl. 8. Ownership of any character that appeared in EERIE 82 would not include ownership in subsequent development of the character, so that when any character appearing in EERIE 82 entered the public domain, it would not inject into the public domain subsequent development of the character. *See Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496 (7th Cir. 2004) (Sherlock Holmes character, as portrayed, enters public domain as each work separately enters public domain).

Plaintiff's theories of chain of title are erroneously founded upon the claim that, because other persons beside William DuBay and Luis Bermejo participated in development discussions

3

leading to the creation of *EERIE* 82, those individuals became copyright owners of The Rook character. To the extent those individuals created potentially copyrightable works such as drawings, those works could have acquired federal copyright protection either by publication with a notice attached, or by registration.[1] But such works are not at issue in this case and the people who may have created them are not thereby authors of The Rook, as registered in Reg. No. B188968, the only copyright at issue. Contributions to a work will not give rise to a copyright interest unless such contributions have at least three attributes: (1) they must be original; (2) they must be works of authorship; and (3) they must be fixed in a tangible medium of expression. 17 U.S.C. §102, U.S. CONST. art I., §8, cl. 8 (Congress may only protect "Writings"). Thus, to the extent that Jim Stenstrum and Budd Lewis spoke words about what should or should not be conceptual attributes of The Rook, no federal copyright was created because words that are spoken aloud can be copied by all, since they have not been fixed in a tangible medium of expression. *See Fritz v. Arthur D. Little, Inc*., 944 F.Supp. 95, 100 (D.Mass. 1996). Moreover, courts have gone to considerable lengths to avoid setting too low a bar for defining works of authorship by rejecting the notion that all persons who provide "some minimal level of creativity or originality" to the work would be deemed to be authors. The Ninth Circuit pointed out that such a standard "would be too broad and indeterminate to be useful" and would "fragment copyright protection" of creative projects. *Garcia v. Google, Inc*., 786 F.3d 733, 742 (9th Cir. 2015) (rejecting ownership claim by actor); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 258 (2nd Cir. 2015) (rejecting ownership claim of film director and recognizing that granting copyright interests of all creative contributors would "make swiss cheese of copyrights");

---

[1] The 1909 Copyright Act, 17 U.S.C. §1, *et seq*. (1976 repealed), was in effect through 1977 and governs these works. 2 Nimmer §7.02[c][2], 7.16[A][[2][b], and 7.16[A][2][c][i] (works created after 1977 acquired federal protection from the moment they were "fixed in a tangible medium of expression." 17 U.S.C. §102(a)(1).

4

*Aalmuhammed v. Lee*, 202 F.3d 1227, 1236 (9th Cir. 2000) (rejecting ownership claim of film consultant); *Thomson v. Larson*, 147 F.3d 195, 205 (2d Cir. 1998) (rejecting ownership claim of play's dramaturg).

Under the 1909 Act, the initial author and copyright owner could be an individual or an employee for hire. *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 743-44, 109 S.Ct. 2166, 2175, 104 L.Ed.2d 811 (1989). None of the evidence put forward by Plaintiff shows that anyone other than Luis Bermejo and William B. DuBay made tangibly fixed, independently copyrightable contributions to EERIE 82, and none of the evidence put forward by Plaintiff raises an issue concerning the proposition that The Rook published in *EERIE* 82 was authored at the instance and expense of WPC.

The only component part of the copyright in *EERIE* 82 that plaintiff claims is at issue before this court is ownership of the character The Rook. Plaintiff's motion completely ignores the underlying legal issue of whether the character The Rook, as published in *EERIE* 82, is sufficiently delineated to warrant copyright protection. If it is not, Plaintiff's motion must be denied for that independent reason, as well.

**B.  Plaintiff's Complaint and Interrogatory Responses Claim a Different Chain of Title From the Motion**

In the operative Amended Complaint (ECF 6) Plaintiff alleges that he ". . . is the legal owner of the copyright for the work entitled The Rook, which is registered with the United States Copyright Office in Registration No. B188968 with a registration date of February 4, 1977, and an initial publication date of January 19, 1977." Amd. Cplt. ¶21. The registration certificate indicates that the registered work was the entirety of issue 82 of a March 1977 issue of a magazine titled EERIE, published in January 1977. EERIE was a horror comic, and a review of EERIE 82 shows that the cover and pages 5-24 of that 74 page issue were devoted to the

5

publication of a story called Man Whom Time Forgot, featuring the initial appearance of character named The Rook. Exhibit 1.  According to his Amended Complaint, ¶22, Plaintiff's ownership derives from his claim to be the successor to both William B. DuBay (hereafter WBD) and to Warren Publishing Company (hereafter WPC).[2]

Plaintiff explained his chain of title on October 26, 2017, answering MRC Interrogatory No. 9.  Plaintiff has never amended this Interrogatory Response.  The flow chart below summarizes the Interrogatory Response, which is attached as Exhibit 2.  A more readily legible copy of the chart is attached as Exhibit 3.



---

[2] The evidence is uncontradicted that WPC was James Warren's sole proprietorship. Warren Dep. 16:4-17:5; 19:15-20:7; 51:13-54:17; 140:5-142:1.

6

This "chain of title" was undone on November 8, 2017, when James Warren explained at his deposition that the purported 1986 assignment from him to WBD was forged. Warren Dep. 39:14-40:20, Ex. 9; 49:12-14. Warren pointed out that the 1986 purported assignment to WBD could not possibly have been created in 1986 because Warren Publishing had been out of business for almost four years as of 1986, and the secretary whose initials on the document indicate that she purportedly typed the assignment in 1986, Elizabeth Alomar, had not worked for Warren since the company collapsed years earlier. Warren Dep. 39:14-40:10.

C. **The Motion's Chain of Title is Erroneous**

Plaintiff's motion now reverses course, and tries to sidestep the forged 1986 assignment by disputing WPC's ownership of the Rook through ownership of copyright registration B188968. He now submits a quite different, and plainly wrong, chain of title, which Defendants set forth in visual form in the chart below:



7

A more easily legible copy of this chart is attached as Exhibit 4.

Plaintiff's first error is that, instead of starting with the ownership of the allegedly infringed registered work that was fixed in a tangible medium of expression as EERIE 82, he starts with unfixed concepts and an unregistered drawing. He points to discussions relating to concept development and a preliminary drawing that he claims (without admissible evidence) was created by WBD in 1976, and asserts that this concept development and unpublished work, in conjunction with WBD's collaboration with writers Jim Stenstrum and Budd Lewis , constituted those three individuals as the authors and owners of The Rook. Plf. Mem. at 5, ¶¶23, 25.[3] This claim fails because concepts are not protectible by copyright, 17 U.S.C. §102 (b), and because the preliminary 1976 work which is the sole evidence of prior creation was either unfixed, or if it was fixed in tangible form, was never published or registered. The work whose authorship is at issue in this case is the EERIE 82 work that was published in January 1977, and deposited and registered at the Copyright Office by WPC later in 1977. The unpublished unregistered work that plaintiff associates with an entity founded in March 1997 called Cartoon Factory, and that he relies upon, is irrelevant, both because no infringement action can be based upon an unregistered work, 17 U.S.C. §411(a), and because no defendant could plausibly be alleged to have had access to such an unpublished work in order to make illicit copies. As Plaintiff's Amended Cpt. ¶¶21-22, and Notice to the Copyright Office, Exhibit 5 hereto, make clear, the work that is at issue in this case is the EERIE 82 work <u>deposited</u> in the Copyright

---

[3] There is no writing by which Jim Stenstrum transferred any rights in his 1976 work on The Rook (and no evidence he created B188968), and there is no evidence that Budd Lewis had any role in authoring B188968.

Office, which shows on its face that The Rook story, at 5-24, was written by WBD and drawn by Luis Bermejo.[4]  See Ex. 1 at 5-24.

      **D.**    **The Most Likely Chain of Title for the Pre-1978 Rook Work Copyright Leads to a Non-Party LLC**

Defendants believe that the following chain of title sets forth ownership of The Rook component of copyright B188968:



The validity of the WPC claim to ownership of B188968 as of 1977 begins with the presumption of the truth of the registration certificate's statement that WPC was the author and owner of the copyright. *See* 17 U.S.C. §410(c).  That presumption is fortified by Warren's testimony that the registered work was prepared at his instance and expense.  Warren Dep.

---

[4] Plaintiff provides no evidence of a valid chain of title from Bermejo, nor does he provide a valid chain of title from WPC to him.

9

27:18-25.  There need not have been a written work for hire agreement or an employment relationship,  because the work for hire doctrine of the Copyright Act of 1909 (applicable to works such as this, created before January 1, 1978), provided that one (the hiring party) who solicits another (the commissioned party) to create a work for pay is presumed to be the author and copyright owner unless the express or implied terms of the contract between the parties reserve the copyright to the commissioned party. *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 743-44, 109 S.Ct. 2166, 2175, 104 L.Ed.2d 811 (1989); *Murray v. Gelderman*, 566 F.2d 1307, 1309 (5th Cir.1978); *Yardley v. Houghton Mifflin Co.*, 108 F.2d 28, 30–31 (2d Cir.1939), *cert. denied*, 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029 (1940). "The crucial element in this determination appears to be whether the work was created at the employer's insistence [sic] and expense, or, in other words, whether the motivating factor in producing the work was the employer who induced its creation." *Murray v. Gelderman*, 566 F.2d 1307, 1310 (5th Cir.1978); *Neva, Inc. v. Christian Duplications, Intl., Inc*. 743 F.Supp. 1533 (MD Fla 1990).  EERIE 82 was created at the instance and expense of James Warren.  Warren Dep. 27:18-25.

      Warren's deposition testimony made it clear that his arrangement with William DuBay regarding The Rook was that it was Warren who owned The Rook.  Specifically, Warren told WBD that if Warren were able in the future to get any revenue from licenses Warren would issue for movie, television or subsidiary rights for The Rook, Warren would give WBD a piece of the money from that exploitation, but there was never any specific agreement, so that the percentage given to WBD would have been in the discretion of Warren.  *See* Warren Dep. 48:17-49:11; 64:25-66:12.

10

At his deposition, Plaintiff explained his research concerning the circumstances of the origination of The Rook. Plaintiff stated:

Q: And so, was the design of The Rook physically based upon cowboy molds from Mattel?

A: Well, since I wasn't party to the creation, I can't say that. I can say that Mr. Warren gave the instance to Mr. DuBay to create a character from this line, but he did not suggest, at least according to this report and according to my conversations with Bill, that he'd become a time-traveler or an adventure hero or anything along those lines."

B. DuBay Dep. 67:3-11.

Plaintiff further stated:

Q: Do you know at whose instance and expense The Rook was created?

A: Well, according to The Making of a Super-Comic Book Hero, excuse me, the instance was given by James Warren. And consistent with the invoice that I found from James Warren's attorney, that would suggest that he was responsible for the expense. However, in a letter dated, I believe, in 1984 to Stanley Harris, Mr. DuBay said that he was not paid for the creation, just paid his page rate. That's just the information I know.

Q: But he was paid for it?

A: He was paid his page rate for the stories, as he describes. *Id*. 105:16-24.

The 1979 article published in Warren Presents The Rook (a comic magazine whose credits page shows that it was edited by WBD, Exhibit 6, at 2) entitled "The Making of a Super-Comic Book Hero," explains James Warren's impresario role in instigating the creation of The

11

Rook.  Under the instance and expense test, and pursuant to the presumption of correctness attaching to the 1977 registration of EERIE 82, WPC was the owner of The Rook.

The correct version of chain of title relating to The Rook character shows that The Rook works as portrayed in EERIE were assigned in 2007 by James Warren to New Comic Company, Exhibit 7; Warren Dep. 147:16-150:5.  New Comic Company in 2015 quitclaim transferred to William B. DuBay, LLC its Rook rights.  Exhibit 8.  But William B. DuBay, LLC voluntarily dismissed its claims when it withdrew from this suit (Compare Cpt., ECF 1, with Amd. Cpt., ECF 6 (William B. DuBay, LLC removed as plaintiff)), and in any case, no individuals ever signed the operating agreement for the LLC, so the LLC has never had the legal capacity to transfer whatever rights it has in The Rook to the remaining Plaintiff.  Hart Dep. 25:7-27:4; D. DuBay Dep. 17:24-19:10.[5]  Plaintiff does not own the copyright.

### E. Even if the Forged 1986 "Assignment" From Warren to WBD Had Been Genuine, There Would Still Be a Defective Chain of Title.

Plaintiff claims ownership directly from the late WBD, and the claim is based upon a document attached to a January 8, 2010 email that purports to be electronically signed by WBD. The cover email, Hart Dep. Ex. 31 (attached), expressly references the testamentary nature of the transfer in characterizing Plaintiff as William B. DuBay's "heir," and the text of the purported assignment expressly states that the transfer of 51 percent of whatever copyright WBD owned in The Rook is only effective upon his death.  As a result, the electronic signature is invalid, because it is governed by Oregon Revised Statute 84.007(2)(a), which provides that federal electronic signatures law validating electronic signatures does not apply to a transaction to the

---

[5] The excerpts of the Venessa Hart deposition referenced herein are attached hereto as Exhibit 9; the excerpts of the Danielle DuBay deposition referenced herein are attached hereto as Exhibit 10; the excerpts of the James Warren deposition referenced herein are attached hereto as Exhibit 11; and the excerpts of the Benjamin DuBay deposition referenced herein are attached hereto as Exhibit 12.

extent it is governed by a law governing the creation and execution of wills, codicils, or testamentary trusts.[6]  Since the transfer to Plaintiff was to be triggered by his uncle's death, the only entity that could transfer the decedent's property would have been his estate. The document is therefore testamentary, and the electronic signature would be invalid, even if WBD owned the copyright in 2010.

### F. Conclusion

On the record before this court, Plaintiff does not own The Rook character component as expressed in Copyright Reg. No. B188968.  The motion should be denied.

DATED:  August 17, 2018                    Respectfully submitted,

/s/   Vincent Cox
Scott D. Ponce (FBN 0169528
Sanford L. Bohrer (FBN 160643)
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Telephone: (305) 789-7678
Facsimile:  (305) 665-2843

and

Louis P. Petrich, *Pro Hac Vice*
Vincent Cox, *Pro Hac Vice*
Leopold, Petrich and Smith, P.C.
2049 Century Park East, Suite 3110
Los Angeles, California 90067-3274
Telephone: 310/277-3333
Facsimile: 310/277-7444
Email: lpetrich@lpsla.com
            vcox@lpsla.com

Attorneys for Defendants

---

[6]Except as otherwise provided in subsection (2) of this section, ORS 84.001 (Short title) to 84.061 (Federal electronic signatures law partially superseded) apply to electronic records and electronic signatures relating to a transaction. (2) ORS 84.001 (Short title) to 84.061 (Federal electronic signatures law partially superseded) do not apply to a transaction to the extent it is governed by:(a) A law governing the creation and execution of wills, codicils or testamentary trusts.

13