## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**BENJAMIN MICHAEL DUBAY,**

     **Plaintiff,**

v.                               **Case No. 3:17-cv-00348-J-20MCR**

**STEPHEN KING; MEDIA RIGHTS
CAPITAL; IMAGINE
ENTERTAINMENT; SONY
PICTURES ENTERTAINMENT;
MARVEL ENTERTAINMENT;
SIMON & SCHUSTER,**

     **Defendants.**

_____/

### O R D E R

     **THIS CAUSE** is before the Court on Defendants' Dispositive Motion for Summary Judgment and Memorandum of Law in Support (Doc. 115) and Plaintiff's Response and Memorandum of Law in Opposition thereto (Doc. 120). After careful consideration of the issues presented, Defendants' Motion for Summary Judgment (Doc. 115) is granted. The Court's analysis in support of that conclusion is as follows:

### I.    **Background**

     Benjamin Michael DuBay ("Plaintiff") is a nephew of William Bryan DuBay, one of the creators of "Restin Dane" also known as "The Rook." The Rook is a comic book character whose first story was published in 1977 in a Warren Publications horror/fantasy comic magazine entitled *Eerie* volume 82 (hereinafter "*Eerie 82*"). According to Plaintiff, The Rook character was distributed in "greater than five million comic magazine copies, throughout the United

States from January 1977 thru March 1983" (Doc. 6, ¶18). The Rook comic remains available to the public today in comic books, graphic novels and electronic forms (Doc. 6, ¶ 20).

Defendant Stephen King is the author of the widely successful series of novels entitled *The Dark Tower*. First published in 1982, *The Dark Tower* has evolved into an eight-volume series, reimagined and interpreted through various mediums, including film and graphic novels. Roland Deschain also known as "The Gunslinger," is the protagonist of the series.

Approximately 35 years after the world first officially[1] met Roland Deschain, Plaintiff brought this action alleging that Roland Deschain is so shockingly and extraordinarily similar to The Rook that Defendant King must have unlawfully copied and appropriated The Rook character. (Doc. 6, ¶¶1, 24).[2] Plaintiff has identified the infringing works as: the eight novels of *The Dark Tower* series written by Defendant King and published by Defendant Simon & Schuster; 16 of *The Dark Tower* graphic novels licensed by Defendant Marvel; and the 2017 feature film *The Dark Tower* produced and/or distributed by Defendants MRC,[3] Imagine Entertainment and Sony Pictures Entertainment. Plaintiff argues that because Roland is the central character in this large volume of works, all works infringe on Plaintiff's validly held copyright of The Rook character.

---

[1] The entire contents of Defendant King's first *Dark Tower* novel, *The Gunslinger*, were initially published in five-installments in *The Magazine of Fantasy and Science* beginning in 1978. (Doc. 115-19, ¶ 11).

[2] Plaintiff acknowledges that Defendant Kings manuscript for *The Dark Tower* may have predated The Rook's publication. However, he argues that "Defendant King made significant transformations characteristically, symbolically, and literarily to his unnamed protagonist featured in the manuscript after having gained access to Restin Dane." Plaintiff argues, "[t]hese transformations can only be explained through willful copying and fraudulent concealment." (Doc. 6, ¶ 36).

[3] Sued as Media Rights Capital.

2

On March 28, 2017, Plaintiff filed a two-count complaint against Defendant King alleging claims for Copyright Infringement and Vicarious Copyright Infringement (Doc. 1, pgs. 28-31). Shortly thereafter, Plaintiff filed an amended complaint naming the remaining Defendants and adding an additional count for Contributory Copyright Infringement against Defendants MRC and Imagine Entertainment (Doc. 6, pgs. 44-46).

II.    **The Relevant Copyright**

Plaintiff claims he is the owner of the copyright for the work entitled "The Rook," registered with the United States Copyright Office under Registration Number B188968. The registration date is February 4, 1977. The initial publication date is January 19, 1977. The deposit copy for No. B188968 is *Eerie 82*. (Doc. 6, ¶ 21). It is by and through this copyright for *Eerie 82* that Plaintiff claims ownership of the copyright the Defendants are accused of infringing. For the purposes of this analysis, the Court will treat Plaintiff as the owner of the relevant copyright for The Rook character.[4]

III.   **Summary Judgment Standard**

Summary Judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing the Court there is an absence of a genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party seeking summary judgment has the initial responsibility of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[4] The Court notes the issue of ownership is far from clear. (*See* Doc. 118). Nevertheless, the Court will proceed in the same manner as the Parties, with the assumption that Plaintiff owns the copyright upon which this action is based (Doc. 120, pg. 4; Doc. 115, pgs. 3, 8).

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed. R. Civ. P. 56(e)). Once the moving party has met its burden, the non-moving party must present specific facts showing there is a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

An issue of fact is "genuine" if the record could lead a trier of fact to find for the non-moving party. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A "material" fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When reviewing a summary judgment motion, "'The district court should resolve all reasonable doubts about the facts in favor of the non-movant and draw all justifiable inferences . . . in his favor.'" *Hickson Corp. v. Northern Corssarm Co., Inc.*, 357 F.3d 1256 (11th Cir. 2004) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991)) In so doing, a Court cannot weigh conflicting evidence or determine issues of credibility. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011). Instead, the Court is "'limited to deciding whether there is sufficient evidence upon which a [fact-finder] could find for the non-moving party.'" *Georgia State Conference of NAACP v. Fayette Cty Bd. of Com'rs*, 775 F.3d 1336 (11th Cir. 2015) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)).

IV.   **Infringement Analysis**

Despite what many may think, "Not all copying . . . is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To make out a prima facie case for infringement of a copyright, "two elements must be proven: (1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Id.*; *Peter Letterese and Assoc., Inc., v. World Inst. of Scientology Enter.*, 533 F.3d 1287, 1300 (11th Cir. 2008). Because evidence of direct copying is rare, courts have "developed methods by which copying can be found indirectly." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994). Absent direct evidence of copying, a plaintiff must demonstrate (1) the defendants had access to the copyrighted work and (2) the works are substantially similar to the protected expression. *Id.* (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 & n.11 (11th Cir. 1982)). Plaintiff must show both access *and* substantial similarity to prove copying. *Id.* at 460.[5]

a. **Summary Judgment in the Infringement Context**

Some courts have found summary judgment to be inappropriate in a copyright infringement lawsuit because of the "inherently subjective nature of the inquiry." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (citing *Beal*, 20 F.3d at 459 (11th Cir. 1994)). Nevertheless, non-infringement has been found as a matter of law and summary judgment granted where, *either*, "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find the works are substantially similar." *Herzog v. Castle Rock Entm't.*, 193 F.3d 1241, 1247 (11th Cir. 1999) (per curiam) (district court opinion affirmed and annexed to Eleventh Circuit ruling)(citations omitted)(emphasis added); *Oravec*, 527 F.3d at 1223 (same);

---

[5] Even if a plaintiff is unable to demonstrate access, he may establish copying by demonstrating that his work and the infringing works are strikingly similar. *Calhoun v. Lillenas Publ'g*, 298 F.3d 1338, 1232 n.6 (11th Cir. 2002). Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).

*Beal,* 20 F.3d at 459 (same).[6] This analysis is sometimes called a two-pronged test: (1) an extrinsic, objective test, and (2) an intrinsic, subjective test. *See Herzog* 193 F.3d at 1257 (citing *Beal v. Paramount Pictures,* 806 F.Supp. 963, 967 (N.D. Ga., 1992)), *aff'd, Beal,* 20 F.3d 454; *Lil' Joe Wein Music, Inc. v. Jackson,* 245 Fed. App'x. 873, 877 (11th Cir. 2007).

Under the extrinsic test, a court will inquire into whether, as an objective matter, the protected expression of the works are substantially similar. *Id.* If, under the extrinsic test, the plaintiff "seeks to protect only uncopyrightable elements" the court will grant summary judgment for the defendant. *Id.* Pursuant to the intrinsic test, the Court will consider whether a reasonable jury, properly instructed, would find the works substantially similar. If a plaintiff cannot meet either prong, a court may grant summary judgment. *Herzog,* 193 F.3d at 1257.

### b. **The Requirements of Originality and Expression**

Just because a work holds a copyright does not mean that that copyright protection extends to every element of that work. Copyright protection extends to that which is original to the author. *Feist,* 499 U.S. at 348. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102(a). Thus "[t]he *sine qua non* of copyright is originality." *Beal,* 20 F.3d at 459 (quoting *Feist,* 499 U.S. at 345). Original in this context means that the work was independently created by the author and possesses a minimal degree of creativity. *Feist,* 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A],[B] (1990)). Similarly, mere ideas, procedures, principles and concepts are not protectable by copyright regardless of the manner or form in which such ideas, procedures, principles and concepts take. 17 U.S.C. § 102(b); *Peter Letterese and Assoc., Inc.,*

---

[6] *See also Lil' Joe Wein Music Inc. v. Jackson,* 245 Fed. App'x. 873, 877 (11th Cir. 2007) (noting the Second Circuit has approved the grant of summary judgment in copyright cases as it allows courts to put "'a swift end to meritless litigation' and avoid long and costly trials.")(quoting *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir. 1980).

553 F.3d at 1302; *Herzog*, 193 F.3d at 1248. Thus, copyright law balances an author's "[r]ight to their original expression," while still "encourage[ing] others to build freely upon the ideas and information conveyed by the work." *Feist*, 449 U.S. at 349-350.

### c. *Scènes à faire*

In addition to non-original works and broad ideas, noncopyrightable material includes *scènes à faire,* which are stock scenes or, "'sequences of events which necessarily follow from a common theme,' or 'incidents, characters of settings that are indispensable or standard in the treatment of a given topic.'" *Peter Letterese and Assoc.*, 533 F.3d at 1302 (quoting *Herzog*, 193 F.3d at 1248). *See, e.g. Herzog*, 193 F.3d at 1262 (holding that characters in a murder mystery who keep secrets are not protectable); *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)(holding figures of muscular superheroes in fighting poses are examples of *scènes à faire* ); *Beal*, 20 F.3d at 463 (noting that in all works involving courtship and marriage have a wedding, usually towards the end of the work); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)(concluding no protection for "drunks, prostitutes, vermin, and derelict cars," as well as "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop" as they are common elements in police fiction); *Warner Bros. Inc. v. Am. Broad. Cos.*, 654 F.2d 204, 210 (2d Cir. 1981)(observing that the fact that both heroes fight villains is nothing more "than the classic theme of good versus evil").

### d. **Substantial similarity**

In the Eleventh Circuit, substantial similarity exists "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc.*, 684 F.2d at 829 (citations omitted). A Plaintiff must establish "specifically that the allegedly infringing work is substantially similar to the plaintiff's

work *with regard to its protected elements.*" *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2010) (emphasis in original).

### e. **Evaluating competent evidence**

Plaintiff urges the Court to ignore Defendants' expert witness Robert Michael Gale. Plaintiff argues Gale's expert opinion undermines the lay observer test for substantial similarity, especially because he does not "test[] the target audience." (*See* Doc. 120, pgs. 12-13).

Expert testimony is appropriate in evaluating the "extrinsic" prong of the above-outlined test, i.e. whether, as an objective matter, the protected expression of the works are substantially similar. *Lil' Joe Wein Music Inc. v. Jackson*, 245 Fed. App'x. 873, 877 (11th Cir. 2007). "Under the extrinsic test, expert testimony and analytic dissection are appropriate." *Herzog*, 193 F.3d at 1257. Additionally, the Court is not left to rely on expert opinion alone to determine whether the protected expressions of the work are substantially similar. To the extent the works at issue have been lodged with the Court, the works themselves have been scrutinized.[7]

### f. **Characters are protectable by copyright separate from the work in which they appear**

Courts may consider the copyrightability of a character apart from the work in which the character appears. 1 Nimmer on Copyright § 2.12[A][1] & [2] (2018). However, the character must be "distinctively delineated" in the plaintiff's work. *Id.* As Judge Learned Hand reasoned, "[t]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d. Cir 1930). Thus, Courts have held characters to have standalone protection where they have displayed "consistent, widely identifiable traits." *Rice v. Fox Broad. Co.*, 330

---

[7] This issue is discussed further in Section X., *infra.*

F.3d 1170 (9th Cir. 2003). *See, e.g., Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*, 900 F. Supp. 1287, 1295-97 (C.D. Cal. 1995) (James Bond protectable apart from the works in which he appeared); *D.C. Comics Inc. v. Unlimited Monkey Bus., Inc.*, 598 F.Supp. 110 (N.D. Ga. 1984) (Superman protected by copyright); *Disney Prods. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978) (Mickey Mouse and other Disney characters protected by copyright).

The Court finds that the distinctive delineation analysis is encompassed in the analysis for substantial similarity. The same factors utilized in evaluating distinctiveness are analyzed by the Court in the discussion of the characters 'similarities *infra. See* 1 Nimmer on Copyright §2.12[A][1] ([t]he inquiry into copyright protection for a character from a work of fiction, along with whether infringement of the character has taken place belong not to . . . the discussion of copyright's subject matter, but instead to the inquiry into substantial similarity.").

g. **The Works Examined**

"When called upon to adjudicate a copyright dispute, a court must compare the works in question." *Beal*, 20 F.3d at 456 (citing *Autoskill, Inc. v. Nat'l Edu. Support Sys. Inc.*, 994 F.2d 1476, 1490 (10th Cir.), *cert denied*, 510 U.S. 916 (1993)). Plaintiff does not allege that any of the written works of Defendant King infringe on The Rook character or comics in a specific, individual capacity. *Cf. Beal*, 20 F.3d 454 (11th Cir. 1994) (The movie "Coming to America" was accused of infringing upon a novel entitled *The Arab Heart* by author Alveda King Beal). Plaintiff instead relies on a broader theory; the works featuring The Rook and Roland Deschain are substantially similar based on the characters featured and the themes pursued. (*See* Doc. 115, Exhibit 41). Specifically, Plaintiff argues that The Rook and Roland Deschain are "substantially similar in their unique elements" and their "unique combination of common traits" (*See* Doc. 120, pg. 15).

9

It is the Plaintiff's position that the unique elements of The Rook "became well-delineated in a two-part story published in *Eerie 82* in March 1977, where the character Restin Dane, aka The Rook was introduced," (Doc. 120, pg. 15).[8] To that end, Plaintiff has included in his summary judgment response the full stories featuring The Rook appearing in *Eerie*, volumes 82-85, 87-88 (Doc. 120, Exhibits 1, 1A, 1B, 1C, 1D, 1E).

Defendant King's novels alone compromise approximately 4,000 pages written over 25 years. Due to the volume of the works at issue, Defendants engaged Robin Furth to author summaries of Roland Deschain's character arc plot summaries for both Defendant King's prose and Marvel's graphic novels. Due to Plaintiff's character-based, thematic and general allegations of infringement, the Court will compare the characters for the purposes of the substantial similarity analysis using Furth's summaries, *Eerie*, volumes 82-85, 87-88 in their entirety,[9] and the other materials lodged with the Court.[10]

---

[8] Plaintiff specifically claims that, "[I]n the inaugural arc, Restin Dane's name, anachronistic cowboy look, time traveling heroism, black bird companion, tower relationship, and the Alamo history are well established unique elements." He further claims that the "unique combination of the otherwise common elements described in Plaintiff's amended complaint, are afforded protection . . . ." Doc. 120, pg. 15.

[9] *Eerie 86* was not included in the materials provided to the Court. The Court is not aware if The Rook appeared in *Eerie 86*.

[10] Federal Rule of Evidence 1006 allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court," provided they are made available to the opposing party. Fed. R. of Evid. 1006. *See United States v. Francis*, 131 F.3d 1452, 1457 (11th Cir. 1997) (noting that Rule 1006 allows a District Court to admit summary evidence, where, in the court's discretion, it would be "inconvenient or unnecessarily time-consuming" to review the full evidence) (citations omitted). Defendants invited Plaintiff to lodge the full works with the Court, if they deemed it necessary due to a belief in the inaccuracy of the summaries. Plaintiff chose not to lodge the Defendant King's works for the Court's review in analyzing this matter and does not contest the accuracy of the summaries. Rather, Plaintiff disputes the accuracy Furth's deposition testimony, arguing that Furth has motive to lie about the relevant issues because she has an employment relationship with Defendant King and authored the alleged infringing graphic novels. (*See* Doc. 120, pgs. 18-19).

To proceed with the analysis, the Court will first examine the general characteristics and story arc of The Rook. The Court will then examine the general characteristics and story arc of Roland Deschain arc as featured in the alleged infringing work of the Defendants.[11] The Court will then identify the similarities between each work and examine which of those similarities are *scènes à faire*. The Court will then conduct the substantial similarity analysis between the original expression of The Rook and the alleged infringing works featuring Roland Deschain. *Beal*, 20 F. 3d at 459. *See also Leigh*, 212 F.3d at 1215.

V.    **The Rook**

    a. **Creation**

William M. Dubay, Budd Lewis and James "Jim" Stenstrum, created The Rook during the fall of 1976. Mr. William Dubay died in 2010. Mr. Stenstrum is the only surviving member of the trio. Plaintiff describes The Rook as a "time-traveling, parallel/alternate world traveling, monster-fighting, romantic adventure hero; who has a penchant for dressing as a cowboy from the Old West and is symbolized by a rook bird" (Doc. 6, ¶16). A few years after his initial debut in *Eerie*, The Rook was given his own magazine, entitled *The Rook*. After his title magazine was cancelled, The Rook again appeared in *Erie* magazine. Warren Publishing eventually went bankrupt and ceased all further publication of The Rook character. The Rook series again appeared in a mini-series was revived by Dark Horse Comics in 2015 and is available and by GooglePlay in a mobile video game (Doc. 6, ¶ 20).

---

The issues raised by Plaintiff are relevant weight to be given to Furth's testimony, not its admissibility or sufficiency.

### b. *The Man Who Time Forgot!*

"He was born . . . Restin Dane but he calls himself . . . THE ROOK!" An exciting and light-hearted comic, The Rook character is first introduced to readers in *Eerie 82* in classically exciting, catchy and heroic terms: "The Most Exciting New Hero in Comics!" and "The Master of the Past, Present and Future!" The Rook is a hero in the traditional mold. He is self-made, likeable, charming and a successful adventure hero. Restin Dane calls himself The Rook because of the "shrewd killer chess piece" in the shape of "an impregnable castle," that he travels through time in and because he moves through time as quickly and mysteriously as "the black bird of prey . . . known also as . . . The Rook!"

Like Batman's Bruce Wayne, The Rook is a wealthy inventor/techno physicist, who experiments with the science of physics, computers and advanced robotronics. The Rook designed the time traveling devices he uses. He most commonly uses a time machine in the shape of a large rook chess piece, although a time machine shaped as a knight chess piece is also featured in the series. He calls traveling through time "castling." The Rook has also built robots to serve as his team of assistants. The most prominently featured robot is a computer robot butler named "Manners." Two more rudimentary robots, aptly named "Nuts" and "Bolts" are also mentioned.

Eventually, The Rook's crime fighting team is comprised of himself, his great, great grandfather Bishop Dane, an outlaw gunfighter whom he rescued from 1874 and Manners. (*See Eerie 85*, 120-1C). The action primarily takes place in the Old American West, but The Rook lives in modern day Arizona in a house called "Rook Manor" or "Rook Castle" which is also shaped like a giant rook chess piece. The Rook has built an underground headquarters there, where he stores his time machines.

The Rook is a bachelor. He is young, ruggedly handsome, square jawed with dark hair and thick sideburns and a muscular physique. The Rook does not age and remains in his prime, despite passing years. Although The Rook's attire changes slightly as his adventures progress, he basically subscribes to the same old American West look throughout.[12] He mostly wears dark jean or black, bell bottomed pants, a torn white or light, long sleeve collared shirt, a dark vest, leg holster, and a belt with a large buckle containing the image of a rook bird, an animal similar in appearance to the common crow. The Rook often, but not always, wears a black cowboy hat with a somewhat reflective silver, hatband. He is frequently armed on his adventures with a revolver, a Bowie knife, and a machine gun.

The Rook's desire "to escape the time in which he is imprisoned" and interest in his ancestral history initially motivates his time travel. Resourceful and brave, The Rook strives to do the right thing, even if it means sacrificing himself or placing himself in harm's way. The Rook's main adversary in *Eerie* is Gat Hawkins. Hawkins wants to be the "Master of All Time" and torments The Rook in his quests (*Eerie 84,* Doc. 120-3). In *Eerie 87*, Granny Gadget is also introduced as a villain (Doc. 120-4).

### c. *As Featured in Erie 82*

The Reader learns The Rook spent a lifetime preparing to time travel, and when he was finally able, his goal was to travel to save Parrish Dane, a relative, who died in the Battle of the Alamo. The Rook character's main storyline in this comic surrounds the Battle of the Alamo and his attempts to save Parish Dane. The Rook goes castling in his rook time machine, to the famous 1836 battle. The Rook introduces himself to Davy Crockett, Colonel William Travis, Colonel James Bowie, and Parrish Dane, who he fights alongside defending The Alamo. The

---

[12] Plaintiff labeled the image of The Rook contained on page 21 of the complaint to define the look of his character (Doc. 6).

13

Rook desperately wants to save all the fighters at the Alamo, but even he and his modern weaponry could not survive the onslaught of the Mexican army. Although he cannot save Parrish Dane, The Rook saves a boy, who was fighting alongside Colonel Bowie. The Rook sweeps the boy, who is later revealed to be Bishop Dane, into his time machine and transports him to the day after the climatic Battle of the Alamo, ensuring the boy's survival. The boy appears to be the sole survivor of the Battle, except for The Rook. The Rook returns to Rook Manor, awash in failure, and in deep despair he could not fulfill his life's mission of saving his ancestor Parrish Dane.

VI.   **Roland Deschain**

a.   *Creation*

According to Defendant King, the character of Roland Deschain, also known as the Gunslinger, was developed over three decades, beginning in 1970. (*See* Doc. 115-19, ¶¶ 9,14). The seventh volume of *The Dark Tower* series was published in 2004. In 2012, Defendant King published a standalone novella, *The Wind Through the Keyhole*, that fits chronologically between the fourth and fifth *Dark Tower* novels.

Defendant King identifies a variety of sources as his inspiration for Roland and *The Dark Tower* novels, including: J.R.R. Tolkien's *The Lord of the Rings*; Robert Browning's poem, "Childe Roland to the Dark Tower Came," which is about a young man, "on a quest for a mysterious dark tower" (Doc. 115-19, ¶ 5);[13] Clint Eastwood's character, "The Man With No Name" featured in spaghetti westerns beginning in the 1960s, including the film *The Good, The Bad, and The Ugly*; and author Clifford Simak's science fiction novel *Ring Around the Sun*. (Doc. 115-19, ¶¶5-8).

---

[13] Defendant King points to several other elements present in the poem that purportedly heavily inspired *The Dark Tower*, such as a great black bird, knights, and a character named Cuthbert, a horn, and the notion that Roland Deschain is the final gunslinger. *Id.*

Defendant King purports to have had little to do with the illustrations of Roland. (Doc. 115-19, ¶¶ 15-16). He points out that the illustrations of The Gunslinger vary greatly from book to book and The Gunslinger played by actor Idris Elba in the film, *The Dark Tower* did not "strictly conform" to the image of Roland he wrote. *Id.* at ¶16.

### b. *The Gunslinger*

In the first installment of *The Dark Tower* series, *The Gunslinger*, Roland lives in a post-apocalyptic Mid-world. Mid-world is a parallel, alternate version of our world that is a compilation of familiar settings: the Old American West, a feudal society, a magical universe, wasteland and a distant future. Within Mid-world, there are remnants of familiar technologies and appliances such as defunct oil derricks, tanker trucks, robotics and machinery, and mostly empty but seemingly technologically advanced cities. In the Court's view, Mid-world may be considered as the hub, while all other parallel worlds are spokes off the central hub.

Roland is descended from Mid-world royalty, Arthur Eld, an architype of King Arthur. He has no living relatives. He can enter the consciousness of people and has the power to hypnotize. He is a deft and accurate shooter of his western-style revolvers and can reload them in an instant. Roland was born in a feudal city-state called Gilead. At the top of the feudal society were the Gunslingers, reminiscent of knights, who dressed like cowboys, and were lethal shots. Gilead falls, and only Roland was left alive, the last Gunslinger. His quest is to find the Dark Tower, the nexus of all worlds and the linchpin of space and time, and protect it from destruction by The Man in Black; who goes by different names and appears in different iterations, including Walter O'Dim, Randall Flagg, and Marten Broadcloak.

At the very least, Roland is a complex protagonist, who as the novels progress, is revealed to be an anti-hero, a profoundly tortured and flawed individual. He does not always do

the "right thing." His actions are, at best, ethically ambiguous. He smokes, drinks, lies, manipulates and commits crimes.

For Instance, in *The Gunslinger*, Roland acts with depravity. Believing that a mad preacher, Sylvia Pittson, had engaged in sexual relations with the villainous Man in Black and is pregnant with a demon, Roland rapes her with a gun. Angry, Pittson sends her congregation after Roland. They are armed with stones, wood and other primitive weaponry. Roland starts shooting her congregation in self-defense, however it quickly turns to murder. By the end of the encounter, Roland has shot and killed 39 men, 14 women, including his lover, and five children. After the massacre, he goes to a honky-tonk, has burgers and beer and then falls asleep.

One character who plays a major part in the series is Jake Chambers, who is introduced in *The Gunslinger*. Jake was from New York City and died when he was hit by a car. In an unexplained way, Jake is transported to Mid-world after his death. Roland hypnotizes Jake and grows to love him, but believes he is a trap set by the Man in Black. Roland promises to take care of Jake, all the while knowing he will eventually kill him. Eventually, Roland leaves a teetering Jake to fall to his death, choosing instead to pursue the Man in Black. Roland realizes he has damned himself. This act begins Roland's evolution from a heartless killer to a character capable of love and compassion. *The Dark Tower* series is not Roland's literal journey to the Dark Tower, but a morality play for Roland's inner quest for redemption.

Roland does travel between parallel worlds in the works. In *The Drawing of Three*, Roland sees three, magical stand-alone doors, with each leading to the mind of a person from New York City. The first door is to the mind of Eddie Dean; the second is to the mind of Odetta Susannah Holmes/Detta Walker, and the third is to the man who originally killed Jake. Eddie is a heroin addict, and Odetta is amputee with multiple personality disorder. Odetta's two

personalities eventually merge, and she then calls herself Susannah. Eddie and Susannah become part of Roland's group. Roland, who at first cared little for others, begins to show compassion and reforms his ways. Roland eventually draws a magic doorway and draws Jake back into Mid-world. Roland promises to protect Jake.

Throughout his quest, Roland interacts with many science-fiction and supernatural elements, such as a monster that bites off two of his fingers, and a gang of cannibalistic mutants. Roland grows old throughout the series and is afflicted with rheumatism. His epic quest ends on a metaphysical tone. When he finally reaches the Dark Tower, he is faced with all of his sins. Roland learns his true adversary is himself. He is doomed to repeat his journey again and again, until he learns to change.

### c.  *The Graphic Novels*

The graphic novels focus on the adventures of Roland in his quest for the Dark Tower. Most of the graphic novels center on the many trials and tribulations that transformed Roland from a young, learning gunslinger, to a hardened killer.

### d.  *The Dark Tower Feature Film*

The actors Idris Elba and Matthew McConaughey play Roland and The Man in Black in the 2017 *The Dark Tower* movie. The movie deviates from the books. The main characters are Roland, Jake Chambers, and the Man in Black. The plot involves The Man in Black abducting psychic children to use their mental abilities, called "the shine," to bring down the Tower, allowing darkness to reign. The first act features Jake being transported to Mid-world where he encounters Roland. The pair have a series of action-packed encounters. The Man in Black and Roland eventually fight in New York City, with Roland emerging victorious. Roland saves the

Tower, Jake and the abducted children. The movie ends with Jake and Roland returning to Mid-world.

Movie Roland looks quite different than the Roland featured in the artwork in the novels and graphic novels. He is clad in tight, black leather. He is African American and does not age. A significant portion of the novels is spent examining Roland's past, this is less prevalent in the movie. Movie Roland is more one dimensional and goes through far less character development. The movie's theme is centered on external rather than internal redemption.

VII.   **Analysis of Substantial Similarity**

In an effort to illustrate the similarities between the two protagonists, Plaintiff describes that Roland Deschain, like The Rook,

> is a quasi-immortal time-traveling, monster-fighting, romantic adventure hero who descends from an immortal, is symbolized by a rook bird, dresses in cowboy garb despite not being from the Old West and who descends from Gilead, a homage to Goliad "The Other Alamo", who traverses time through dimensional doors connected to a tower who is in the aesthetical likeness of Restin Dane as well as having been similarly named consistent with an admitted signature symbolization device of Defendant King's. . . .

(Doc 115-41)( grammar errors in original).[14] "In determining whether a character in a second work infringes a cartoon character, courts have generally considered not only the visual resemblance but also the totality of the characters' attributes and traits." *Warner Bros. Inc. v. American Broad. Co., Inc.*, 720 F.2d 231 (2d Cir. 1983) (citations omitted).

The Court has examined all the purported similarities, including the totality of the characters' attributes and traits. However, "it would be neither useful nor judicious to detail each

---

[14] Plaintiff describes the similarities slightly differently in each relevant document, however, the crux of the description remains the same.

and every one." *Beal*, 20 F.3d at 460. The Court will instead detail the analysis of those claimed similarities that are the most significant and representative. *Id.*

The Court finds Plaintiff's characterization above, while somewhat true, analyzes the characters at such a high level of abstraction and generality that it does not truly reflect the characters or their shared traits. Analyzing most adventure heroes with such a high level of abstraction would lead to a finding of infringement. Plaintiff ignores the true details and context that makes each character unique in his own right.

Witness Gale illuminated how a high level of abstraction and generalization can lead to an erroneous conclusion. To illustrate, he compared two movies: *The Wizard of Oz* and *Star Wars*. (Doc. 115-6, pg. 67). Both films feature main characters who lives with an Aunt and Uncle in a rural environment, leave home to go on a quest, are accompanied by a character made of metal important to the success of the quest (the Tin Man/C3PO Robot) and a hairy character (The Cowardly Lion/Wookie), and seeks a wise old man for help (The Wizard/Obi Wan Kenobi). The villains in both films dress completely in black (The Witch/Darth Vader) and wear distinctive headgear (Witch's hat/Darth Vader's helmet). Yet, no reasonable person would call the movies *Star Wars* and *The Wizard of Oz* substantially similar works. (Doc. 115-6, pg. 67).

An illustration of this adage was made by the Eleventh Circuit in *BUC International Corp. v. International Yacht Council Ltd.*, 489 F.3d. 1129, 1142-43 (11th Cir. 2007) in explaining the difference between copyright law protecting the expression of ideas and not the ideas themselves. Assuming the book *Moby Dick* was not in public domain the Court stated, "[t]he idea of hunting a formidable whale at the lead of an eccentric captain is not protected by copyright law. The expression of this ideas as it is encapsulated in the novel *Moby-Dick* however, is protected by copyright." *Id.* at 1143.

a. *Adventure Seekers*

Both Roland and The Rook are the adventure-seeking protagonists of their stories. As Plaintiff points out, they are the stories to be told. The Rook seeks to do the "right thing." He is upbeat and motivated by a desire to correct history, and make things better. In other words, The Rook is a classic hero.

Roland, however, is not a classic hero. He is at times, dark and brooding. He kills in cold blood, leaves Jake to die, sacrifices those around him to reach the Dark Tower and is on a quest for redemption. While Roland and The Rook are both adventurers, the comparison stops there; the Court does not find the type of adventures, motivations for the adventures, or the characters' actions during the adventures to be substantially similar.

b. *Time Travel*

Time travel is an element in both works. Defendants point out that Roland does not time travel; rather he "visits parallel worlds that are not his own." (Doc. 120, Furth Deposition, pg. 50) That distinction in label notwithstanding, the act of entering different time periods plays a different role in each work. The Rook's desire to time travel and the adventures he has while time traveling are central storylines. Time travel is the hook; it is the thing that provides him adventure and a platform to succeed in adversarial situations. The Rook uses time travel in attempt to correct perceived wrongs in history, or to save those he loves. This is best illustrated by some of the catchy headlines associated with The Rook's comics: "His time . . . was any time! Every time!" and "The Master of the Past, Present and Future!" The Rook can choose what time period he would like to travel to. For example, he travels to 1836 and the Battle of the Alamo. The Rook is technologically savvy. The machine most used in the *Eerie* series look like a rook

chess piece or a castle. It is time travel in the classic sense; he gets into a machine and arrives in a different time. Usually, The Rook can travel through time whenever and wherever he chooses.

In Roland's quest for the Dark Tower, time travel is not the adventure itself and is less central to the plot. Time travel is a means to an end. When he does travel, Roland does not use a time machine. Rather he travels through literal doorways to parallel worlds connected to a particular character. The worlds are not always synchronized in time, and the portals are sometimes thin, so that the parallel worlds mingle. Roland has no control over where and when he will travel to. Likewise, Roland cannot choose where the portals lead, only whether to enter them. [15]

The element of time travel in each work is not substantially similar. Even if this Court found that the element of time travel was a similarity between the two works, time travel in the general sense, is hardly a unique, original expression. *See, e.g.,* the films *The Time Traveler's Wife, Kate and Leopold, Back to the Future, The Time Machine,* and *Midnight in Paris.* At least one court has found that involuntary time travel is so pervasive, that it is not subject to copyright protection. *Feldman v. Twentieth Century Fox Film Corp.,* 723 F. Supp.2d 357, 366 (D. Mass 2010) (noting that warning signs of upcoming time travel, after effects showing time traveling is complete, a tragic romance related to time traveling, and significant consequences as a result of time travel are *scènes à faire* or stock scenes in the portrayal of time travel).

c. ***Gunslingers***

Plaintiff claims that both Roland and Restin "descend from a familial line of gunslingers." Gunslingers as imagined by popular culture are personified by The Rook and

---

[15] While both works mention traveling via time fragments or doorways, the Court finds that this similarity is animated in different ways. The Rook travels on fragments or doorways by using his time machine. Roland has no machine.

Bishop Dane, someone in the American West who carried a gun and was an excellent, quick shot. However, what it means to be a gunslinger on Mid-world is independently defined by Defendant King within *The Dark Tower* novels and contains only some pop-culture elements. As imagined by Defendant King, Gunslingers are a caste of elite, aristocratic gunfighters who train from childhood to be heroes. They have a code of honor. Roland is a descendent of royalty, and his father was a leader of the gunslinger caste.

Readers do not learn about The Rook's immediate ancestral history in *Erie*. However, readers do learn that his great, great grandfather Bishop Dane was performing as a classic, western, gun fighter before he met The Rook. While both The Rook and Roland have a familial history of gun fighting, those histories manifest in different ways and are not substantially similar.

### d.  *The Towers*

The Rook and Roland are similar to the extent that medieval towers play a large role in their adventures. However, the looks and function of each tower are different. Rook Manor is The Rook's lair. It is his tower-shaped home base where he stores his time machines, keeps his robots, watches recordings of his travels called "time tapes," and rests between adventures. The tower time machine serves as a vehicle by which The Rook goes on his time traveling adventures. Both towers look like cartoonish versions of their namesake, the rook chess piece.

Roland's Dark Tower serves as the linchpin of a time and space continuum; not a home, not a time machine. Its look is gothic, ornate and menacing. It is often featured rising out of a swath of hazy fog. In the illustrations, the Tower is often set far in the background, reminding readers that Roland is nomadic; his quest is long; and his redemption distant. The towers are not alike, and do not serve like roles in each work.

e. *Romantic*

Plaintiff claims that a point of similarity between the characters is that both The Rook and Roland romantically interact with women. Even if having a protagonist who has romantic interactions with women is an original expression, The Rook and Roland's interactions with women could not be more different. While Roland softens as his adventures continue, his interactions with women are often shocking and violent. He impregnates his first and only love Susan Delgado and then leaves her. She is then burned alive as he escapes, illustrating the sacrifices he is willing to make in his quest for the Dark Tower. His rape of Pittson with his firearm is shocking.

The Rook is classically dashing and romantic. For example, In *Eerie 83*, The Rook is romantically interested in January Boone and Kate McCall. When trouble ensues, Ms. Boone pleads with The Rook to keep himself safe and return to her. The pair then share a kiss. Later, while landing a punch against Hawkins and his allies, The Rook cheekily says, "This one is for Kate," "This one is for Jan."

f. *The Bad Guy*

Plaintiff points out that the nemesis of both characters is "the man in black." (Doc. 6, pg. 26, #14). What Plaintiff means is that both characters' nemesis wears black. However, both versions of Plaintiff's assertion are misstatements. The Rook, as he is featured in *Eerie*, has varied enemies. While it is true Hawkin makes an appearance in multiple episodes, the villain The Rook is tasked with defeating depends on the time traveling adventure he finds himself in.

Roland's nemesis throughout the books, though known by multiple names and incarnations is one being, The Man in Black. The Man in Black seeks to destroy the Dark Tower

and bring chaos to Mid-world. Roland has one constant and animating enemy throughout his quest.

Even if both characters had one significant adversary in their quests that only wore black, this is hardly original expression; Venom (*Spiderman*), Darth Vader (*Star Wars*), Black Manta (*Acquaman*) and The Wicked Witch of the West (*The Wizard of Oz*) are all villains who wear black.

g. ***Overall Look***

The Rook and Roland's looks are similar. They both wear western gear and recall imagery of the Old American West. However, neither look is original or distinguished. The overall look of each protagonist is a mishmash of stock elements or *scènes à faire* of western heroes. Surviving Rook co-creator, Stenstrum's testimony is illustrative of this point (Doc. 115-60). Stenstrum testified that Mr. William Bill DuBay asked Stenstrum to make a costume for The Rook that he could quickly show Warren Publishing. Within minutes, knowing the comic was a Western, he "grabbed things [he] remembered from the past." (Doc. 115-60, pg. 53). Stenstrum best explains his inspiration for the look of The Rook:

> There was the vest and the shirt from Rod Taylor[16] and it was—the hat I remembered from a TV show. I'm not sure if it's the proper one, but it had a very interesting look. It was a –it had these kind of disks that were put together to form a kind of a band and it was a . . . . Anyway, I had taken that and I threw that hat together and – the black I took from—I always like Paladin from –the big old hat from "Have Gun – Will Travel.["] [17]  So I made him pretty much all black except for the white shirt . . . .

---

[16] The actor Rod Taylor played H. George Wells in *The Time Machine*, the 1960 film based on the book by author H.G. Wells of the same name.

[17] *Have Gun-Will Travel* was a Western TV series in the late 1950s early 1960s, featuring a man named Paladin, played by Richard Boone, who was a professional gunfighter who traveled around the Old West.

(Doc. 115-60, pgs. 53-54).

According to Defendant King, he did not create or supervise the illustrations or cover art for any of *The Dark Tower* novels, the film or the graphic novels. (*See* Doc. 115-19). [18] Even assuming he had, the Court notes that Roland appears differently in each novel, each graphic novel, each version of the same novel. However, the look is similar at its core, a western, or cowboy looking loner in often desolate or eerie surroundings (*See* Doc. 115-32).

The Rook's look, that of a cowboy, is the customary, stock-treatment given to those characters set in the old west or worlds similar to the old west, it is the definition of *scènes à faire*. *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d at 102 ("[E]lements of a work that are 'indispensable, or at least standard, the treatment of a given topic'- like cowboys, bank robbers, and shootouts in the American West—get no protection.") (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d, 972, 979 (2d Cir. 1980)).The variation in each character's western look between years and stories underscores this point. The characters do not have unique looks. One would expect a character who lives in Mid-world, akin to the Old West, to wear western gear.

---

[18] Defendant King has indicated in his book *On Writing*, that he leaves space for the reader to fill in the physical details of his character's appearances. He writes,

> I can't remember many cases where I felt I had to describe what the people in a story of mine looked like—I'd rather let the reader supply the faces, the builds, and the clothing as well. If I tell you that Carrie White is a high school outcast with a bad complexion and a fashion-victim wardrobe, I think you can do the rest, can't you? I don't need to give you a pimple-by-pimple, skirt-by -skirt rundown. We all remember one or more high school losers, after all; if I describe mine, it freezes out yours, and I lose a little bit of the bond of understanding I want to forge between us. Description begins in the writer's imagination, but should finish in the reader's.

(Doc. 115-19, pg. 6)

One would expect a character living in Arizona in the 1970s who frequently time travels to the Old West to wear western gear. [19]

The looks of both Roland and The Rook are so widely used to represent Western protagonists that they are not original. For instance, actors Clint Eastwood in the movie *Joe Kid,* Earl Holliman as Sundance in the TV series *Hotel De Paree,* and Rory Calhoun in *The Domino Kid* all look like The Rook, square jawed, cowboys, wearing wide brim dark hats. (*See* Doc. 116-6, pg. 23).

Plaintiff further argues that both The Rook and Roland have medium-length hair, that is dark, sometimes unkempt, with long-thick sideburns (*See* Doc. 6). The description Defendant King provides of Roland in his writings is someone who is thin with black hair, blue, eyes. These general physical characteristics are not protected by copyright. *See Whitehead v. Paramount Pictures Corp.,* 53 F.Supp. 2d 38, 50 (D.D.C. 1999)(noting that "general characteristics such as black hair, intelligence patriotism and slight paranoia . . . are not copyrightable and do not establish substantial similarity.")

h. *Name*

Plaintiff argues that because both Roland Deschain and Restin Dane ("The Rook") have the initials R.D, this is an indicia of copying. However, this is a similarity without import. Even if the protagonists were to share the same exact name, this "by itself is insufficient to establish substantial similarity between the characters." *Hogan,* 48 F.Supp.2d at 3119. *See also* 37 C.F.R.

---

[19] The Court does not agree with Plaintiff's assertion that Roland is wearing a uniform out of his time. Defendant King has defined his own world for Roland, one which is akin to the Old American West. The Court also finds Plaintiff's argument that The Rook's look is anachronistic is contradicted by the comic itself. "His time . . . was any time! The Place he called home . . . The Old West!" (Doc. 120-1, *Eerie 82*)

§ 202.1(a) ("words and short phrases such as names, titles, and slogans . . . mere variations of typographic ornamentation, letting or coloring . . . ." are excluded from copyright protection).

i. *Historical References*

Plaintiff argues that The Rook and Roland are substantially similar because they both feature the Battle of the Alamo, an event where there were no survivors, yet manage to survive in their respective stories.  (Doc. 6, ¶ 37). Roland was born and raised in a place called Gilead, which eventually falls, and all of Roland's fellow gunslingers are slaughtered. Plaintiff claims that the name Gilead is an homage to Goliad, a massacre of the Texan Army by the Mexican Army in the Texas Revolution, sometimes known as "The Other Alamo." *Id.*  The Rook's ancestral heritage is traced to the Battle of the Alamo, and in his inaugural story arc, The Rook time travels back to The Alamo and fights alongside James Bowie and Davvy Crockett.

This similarity is not subject to protection. The Battle of the Alamo, or the concept of a group of people under siege, is not unique. It is not original. It is a historical event "in the public domain, free for others to draw upon," subject to the imagination and reimagination of artists. *Zalewiski*, 754 F.3d 95 at 102. As one court has explained,

> [A]ny author may draw from the history of English-speaking peoples, but not one may copy from *A History of English- Speaking Peoples.* Any artist may portray the Spanish Civil War, but no one may paint another *Guernica.* And anyone may draw a cartoon mouse, but there can be only one Mickey."

*Id.* That both Roland and The Rook were the sole survivors of such battles does not change the analysis.

j. *Birds*

Similar birds are featured in each work, but they are not featured in the same way. The Rook sees a rook who assists him in his mission in *Eerie* 83 and *Eerie* 84. In another episode,

27

The Rook puts on a pair of rook wings and flies besides the bird into battle. The image of the Rook bird, a kind of crow, is found on his belt buckle, but is not otherwise prominently featured. The rook chess piece is much more prominently featured. Roland encounters a raven named Zoltan in *The Gunslinger*, and as young boy, had a hawk that he sacrifices to win combat with his trainer. That a bird resembling a crow or hawk is featured on many of *The Dark Tower* novel covers is of no import.

### k. *Generalities*

Plaintiff correctly points out that both Roland and The Rook are brave, excellent marksman, born leaders, determined, engage in hand to hand combat and fight monsters. However, these characteristics are *scènes à faire* of action adventure heroes.

### l. *Total look and feel*

The Eleventh Circuit has recognized that lists of similarities and dissimilarities between works are inherently subjective and unreliable. *Leigh*, 212 F.3d at 1215. *See also Singleton v. Dean*, 611 Fed. App'x. 671 (11th Cir. 2015)("lists of similarities between two works are inherently subjective and unreliable, particularly where the list contains random similarities, as many such similarities can be found in very dissimilar works") (citing *Beal*, 20 F.3d at 460). Perhaps in response to this concern, some courts, including the Second Circuit, examine the total concept and feel of the characters at issue. *Warner Bros. Inc.*, 720 F.2d 231, 241 (citations omitted). *See also Sheldon Abend Revocable Trust v. Spielberg*, 748 F.Supp.2d 200, 208 (S.D.N.Y. 2010) (When analyzing two characters for similarities, courts examine the "'totality of [the characters'] attributes and traits as well as to the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work].""). (citations omitted).

This Court has compared the totality of the works at issue. The Rook is a light, at times comical, campy science fiction comic. The Rook character is a hero that reflects that lightness. He is a mile wide and an inch deep. Roland is completely different. He is disturbed, introspective and at times, murderous. *The Dark Tower*, through Roland, explores some very dark themes. Roland is obsessed by his quest to the Dark Tower. The Rook rescues his great-great grandfather, who becomes his sidekick along with Manners. Roland has no living relatives. The group that Roland travels with shows the very different tone of the Dark Tower novels. He travels mostly with a heroin addict, an amputee with bipolar disorder and a 12-year-old boy. Roland has the power to hypnotize and enter the conscious of others. Restin has a time machine, but no super powers.

To the extent similarities that exist between Roland and Restin, they are similarities general ideas and *scènes à faire*. *Beal*, 20 F.2d at 464.[20] *See Hogan v. DC Comics*, 48 F.Supp.2d 298 (S.D.N.Y. 1999) (holding no substantial similarity of the characters, despite them both being young, male, half-vampire characters named Nicholas Gant with similar appearances, both of whom had flashbacks and killed others); *Cabell v. Sony Pictures Entm't Inc.*, 714 F. Supp.2d 452, 454 (S.D.N.Y. 2010) (no infringement where the main characters who were both military-trained hair stylists who fought crime and used hairdryers as weapons).

Plaintiff could still prevail on a claim for infringement if the way in which the works at issue here express the unoriginal ideas is substantially similar or the unoriginal elements "have

---

[20] As mentioned *supra*, characters have been afforded copyright protection separate and apart from the work in which they appear when the character has "developed a constant set of traits that distinguish [it] from other fictional characters." *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206, 1216 (C.D. Cal. 1998)(affording Godzilla standalone copyright protection). This Court reaches no decision in terms of whether The Rook is ultimately sufficiently delineated to warrant standalone copyright protection. Even if this Court were to find the character sufficiently delineated for stand-alone protection, the characters and works at issue here are not substantially similar in original/protected expression.

been combined in an original way." *Hogan*, 48 F.Supp.2d at 311 (citing *Walker*, 784 F.2d at 50). *See Feist*, 499 U.S. at 362 (Even a work that is entirely a compilation of unprotectible elements may be copyrightable under certain circumstances). For all the reasons discussed herein, that is not the case here.[21] The combination of non-unique elements in each character is not substantially similar.

## VIII.   **Access**

The Court need not reach the question as to whether Defendant King[22] had access to The Rook. Resounding evidence of access does not dispense of the necessity of finding substantial similarity. Beal, 20 F.3d 460. The proposition that overwhelming proof of access can substitute for the requisite degree of substantial similarity is often labeled the "Inverse Ratio Rule." 4 Nimmer on Copyright §13.03[D] (2018). However, the inverse ratio rule is not the law of the Eleventh Circuit. *Dream Custom Homes, Inc. v. Modern Day Constr.*, 476 Fed. App'x. 190, 191 (11th Cir. 2012).

## IX.   **Graphic Novels and Movie**

For all the reasons set forth herein, Marvel's graphic novels and *The Dark Tower* movie are not substantially similar to The Rook.[23]

## X.   **Plaintiff's Expert Witnesses Fail to Raise a Genuine Issue of Material Fact**

Plaintiff's experts fail to raise a genuine issue of material fact on the issue of substantially similarity. Plaintiff argues that one of his experts, Tracy Buchanan demonstrates the substantial

---

[21] Another example is the protagonist Rip Hunter from the *Rip Hunter Time Master* comic that ran in the 1950s and 1960s. Rip was an inventor/time traveler, used a machine of his own making and was a crack shot.

[22] Or other defendants.

[23] The images at issue only have broad, stock elements as similarities.

similarities of the characters because he purportedly conducted research into the response of "lay audience." (Doc. 120, pg. 14). Plaintiff's arguments are misguided. *See Warner Bros. Inc.*,720 F.2d at 245 ("When a trial judge has correctly ruled that two works are not substantially similar as a matter of law, that conclusion is not to be altered by the availability of survey evidence indicating that some people applying some standard of their own were reminded by one work of the other.")

While the Court has real doubts as to whether Tracy Buchanan's expert report is ultimately admissible at trial, as it summarizes Internet commentators remarking on the similarities of Roland and The Rook, the characteristics the commentators identify as common between the two protagonists are nothing more than *scènes à faire*. Moreover, legitimately reminding someone of a copyrighted character is not the same as infringement. *See Warner Bros.*, 720 F.2d at 242 ("Stirring one's memory of a copyrighted character is not the same as appearing to be substantially similar to that character, and only the latter is infringement.").

Plaintiff's other expert, Richard Ardnt has failed to show substantial similarity of the protected elements of each work. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239 (11th Cir. 2007) (holding that the District Court properly excluded expert reports that focused on concept and ideas of the works at issue rather than on the expression of those concepts and ideas) (emphasis in original).[24]

XI.   **CONCLUSION**

The similarities between The Rook and Roland concern only non-copyrightable elements.

---

[24] Plaintiff's former expert Jeffrey Rovin has a conflict of interest in this matter. He offered an opinion prior to learning of that conflict and will not testify at trial. This Court, thus, has not considered his opinion in this matter. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999)("inadmissible hearsay 'cannot be considered on a motion for summary judgment.").

The protected elements of The Rook and Roland are dissimilar, even when viewed in the light most favorable to Plaintiff. No reasonable jury, properly instructed, could find the works substantially similar.

ACCORDINGLY, it is **ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. 115) is **GRANTED**;

2. The Clerk is directed to terminate all pending motions, enter Judgment in favor of Defendants and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28 day of February 2019.

_____
HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Robby T. Cook, Esq.
Robert R. Fredeking, Esq.
Vincent Cox, Esq.
Louis P. Petrich, Esq.
Raymond F. Treadwell, Esq.
Sanford L. Bohrer, Esq.
Scott D. Ponce, Esq.
Michael Manuel Gropper, Esq.